Cooke, J.
We determine here whether the operators of a parking garage are liable in negligence for an injury to a pedestrian struck by a car while it was being driven out of the garage and across an adjacent sidewalk, not by a garage employee, but by a patron of the garage.
After trial in the Civil Court of the City of New York, a *782 verdict was returned in favor of plaintiff against the owner and operator of the car and the operators of the garage, but not against a truck which struck the plaintiff after he was struck by the car. The jury apportioned 75% liability to the car and 25% liability to the garage. Upon motion, the Trial Judge set aside the verdict against the garage on the basis of his conclusion "that the negligence of the Garage was not aproxímate cause nor a concurring cause of the injuries sustained by the plaintiff herein and that the sole proximate cause of the injuries was the failure of [the driver] to give the plaintiff the right of way as required by § 1173 V. & T. Law.”
Appellate Term reversed and reinstated the verdict in an opinion which stated that since there was evidence in the record from which it could be found that the manner of operation of the garage was a source of potential injury to pedestrians and it was reasonably foreseeable that injuries to such pedestrians would be inflicted by vehicles operated by third persons, the issue was "at the very least” a question of fact for the jury. The Appellate Division affirmed Appellate Term, without opinion, with one dissent. We reverse.
We agree that the garage is not liable in negligence for plaintiffs injuries. As pointed out in the Appellate Division dissent, as well as by the Trial Judge, attempts by plaintiffs in similar circumstances to show a causal connection between the operation of the premises and the negligent operation of the vehicle have been rejected (see, e.g., Weber v City of New York 24 AD2d 618, affd 17 NY2d 790; Tauraso v Texas Co., 275 App Div 856, affd 300 NY 567). We need not, however, decide the case on that basis, because, regardless of proximate cause, a garage owes no duty to pedestrians in this type of case.
It is well established that before a defendant may be held liable for negligence it must be shown that the defendant owes a duty to the plaintiff (Palsgraf v Long Is. R. R. Co., 248 NY 339, 342; see, also, 1 Shearman and Redfield, Negligence [Rev ed], § 4, pp 10-11). In the absence of duty, there is no breach and without a breach there is no liability (Kimbar v Estis, 1 NY2d 399, 405). This requirement is expressed in the often-quoted remark: "Negligence in the air, so to speak, will not do” (Pollock, Torts [13th ed], p 468). The question of duty, however, is best expressed as "whether the plaintiffs interests are entitled to legal protection against the defendant’s conduct” (Prosser, Torts [4th ed], § 53, p 325).
*783 In the case before us, the fundamental issue is whether the defendant garage owed a duty to the plaintiff. It is undisputed that the driver of the car owed a duty to the plaintiff, if not because of his operation of the car, then surely from the statute which at that time provided: "The driver of a vehicle within a business or residence district emerging from an alley, driveway, or building shall stop such vehicle immediately prior to driving onto a sidewalk or onto the sidewalk area extending across any alleyway or driveway, and shall yield the right of way to any pedestrian as may be necessary to avoid collision, and upon entering the roadway shall yield the right of way to all vehicles approaching on said roadway.” (L 1959, ch 775.)* Since the statute specifies "the driver”, it is clear that any duty owed to pedestrians by the garage is not to be found therein.
The question then is whether, since there was evidence that patrons of the garage often drove their cars out of the garage and across the sidewalk without stopping, there arose a duty on the part of the garage to take measures to prevent or discourage this practice. Stated another way, the question is whether this garage, or any garage, has a duty to control the conduct of its patrons for the protection of off-premises pedestrians.
Commentators have pointed out that the duty to control others arises only in the following relationships: (1) "[t]he relationship between the defendant and the person who threatens the harm to the third person may be such as to require the defendant to attempt to control the other’s conduct” or (2) "there may be a relationship between the defendant and the person exposed to harm which requires the defendant to afford protection from certain dangers including the conduct of others” (Harper & Kime, Duty to Control the Conduct of Another, 43 Yale U 886, 887-888). While either of the above relationships may superficially appear to be applicable in the case before us, an examination of the situations in which these principles have been applied shows that there is no duty owed here.
With respect to the first relationship described above, one example of a situation in which there is a duty to use care to *784 control another’s conduct is the master and servant relationship. The relationship between the garage and its patron obviously would not fit that characterization. Yet another example is the duty of the owner of a vehicle to use care to control the conduct of the driver when the owner is riding in the vehicle. Even in that type of case, however, it is stated that: "the defendant must be shown to have had in fact a reasonable opportunity to control the driver” (2 Harper & James, Torts [Rev ed], § 18.7, p 1055). (This type of liability is not to be confused with vicarious liability which is imposed on the owner of the vehicle by section 388 of the Vehicle and Traffic Law without regard to whether the owner was able to control the driver.) In the instant case, the garage may have taken precautions, but, in no sense, can it be said that there was, in fact, a reasonable opportunity to stop drivers from disregarding these precautions in the same way that such drivers disregard their own sense of the danger to pedestrians caused by not stopping or by proceeding recklessly. Accordingly, to say that a duty to use care arose from the relationship of the garage to its patrons when there was no opportunity to fulfill that duty, places an unreasonable burden on the garage, indeed.
With respect to the second relationship described above, the question is whether the relationship of a garage to pedestrians who use the sidewalk across which cars leave the garage imposes a duty on the garage to take some precautions to protect pedestrians from its patrons. An example of this type of relationship is the duty of a carrier to protect its passengers from fellow travelers (see Harper & Kime, 43 Yale LJ, at pp 901-903). This duty may obviously be implied from the contract of carriage and stems from control of the carrier (see Higgins v Watervliet Turnpike Co., 46 NY 23, 26). The relationship of the garage to pedestrians is, however, at best somewhat tenuous. The garage obviously owes a duty to protect pedestrians from the acts of its own employees when driving a patron’s vehicle across the path of pedestrians. On the other hand, it would be most unfair to impose that duty on the garage with respect to acts of its patrons. A duty to prevent such negligence should not be imposed on one who does not control the tort-feasor (see Clayton v Monaco, 24 Misc 2d 27 [Pittoni, J.]; see, also, Parking Lot-Liability-Moving Vehicle, Ann., 38 ALR3d 138, 145-146; cf. Friedman v Gearrity, 33 AD2d 1044).
*785 The present legislation with respect to driveways supports this analysis. The Legislature could have prescribed requirements as to the type of precautions, e.g., stop or warning signs, or steps garages must take to protect pedestrians from the negligence of its patrons. More specifically, the Legislature could have made it a requirement that garages have their employees drive the patron’s vehicles out onto the street, thereby placing the responsibility directly on the garage to see to it that pedestrians are not injured by vehicles leaving the garage. Instead, section 1173 of the Vehicle and Traffic Law imposes the duty on the driver of the vehicle, whether such driver is the patron or the employee of the garage. (See, also, Vehicle and Traffic Law, § 1143, with respect to the duty to yield the right of way to vehicles, which also imposes the duty on the driver.)
The statutes impose a duty on the driver because pedestrians are entitled to legal protection from the conduct of the driver. To this extent they may seek legal redress and are not without a remedy. To hold that pedestrians are similarly entitled to legal protection from the garage for the conduct of its patrons would be to create an unnecessary extension of a duty beyond the limits required under the law of negligence as we know it. That in this particular case there was evidence that no significant precautionary measures were taken to prevent the negligent conduct of its patrons does not justify the imposition of any duty. Although it is reasonable to require one person to be responsible for the negligent conduct of another in some instances, it is unreasonable to impose that duty where the realities of every day experience show us that, regardless of the measures taken, there is little expectation that the one made responsible could prevent the negligent conduct.
Foreseeability should not be confused with duty. The principle expressed in Palsgraf v Long Is. R. R. Co. (248 NY 339, supra), quoted by the dissent, is applicable to determine the scope of duty—only after it has been determined that there is a duty. Since there is no duty here, that principle is inapplicable.
In holding that there is no duty here, it must be stressed that not all relationships give rise to a duty. One should not be held legally responsible for the conduct of others merely because they are within our sight or environs. Neither should one be answerable merely because there are others whose *786 activities are such as to cause one to envision damages or injuries as a consequence of those activities. In this respect, a moral duty should also be distinguished from a legal duty. The former is defined by the limits of conscience; the latter by the limits of law. A person may have a moral duty to prevent injury to another, but no legal duty. While a court might impose a legal duty where none existed before (see, generally, 1A Warren’s Negligence, § 3.13, subd [2], pp 166-167), such an imposition must be exercised with extreme care, for legal duty imposes legal liability. When a duty exists, nonliability in a particular case may be justified on the basis that an injury is not foreseeable. In such a case, it can thus be said that foreseeability is a limitation on duty. In the instant matter, however, we are concerned with whether foreseeability should be employed as the sole means to create duty where none existed before (see 2 Harper & James, Torts, § 18.2, particularly p 1027; see, generally, §§ 18.3-18.5).
If a rule of law were established so that liability would be imposed in an instance such as this, it is difficult to conceive of the bounds to which liability logically would flow. The liability potential would be all but limitless and the outside boundaries of that liability, both in respect to space and the extent of care to be exercised, particularly in the absence of control, would be difficult of definition. Consider a city like New York with its almost countless parking garages and lots. Think especially of those in the theatre districts and around sporting stadiums and convention halls with the mass exoduses that occur upon cessation of the events which draw the crowds. Think also of the parking facilities at some hotels, office buildings and shopping centers. The burden cast on the operators of these parking establishments in order to discharge their responsibilities in respect to patron-operated vehicles beyond the confines of their properties would be an impractical and unbearable one. More importantly, there is no basis in the law for the imposition of this burden.
The order of the Appellate Division should be reversed and the judgment of the Civil Court reinstated.

 Section 1173 of the Vehicle and Traffic Law, as amended by chapter 603 of the Laws of 1970, does not change the requirement that the "driver” stop the vehicle prior to driving on the sidewalk.