Carolyn McCARTHY, Individually and as Executrix of the Estate of Dennis McCarthy, Kevin McCarthy, Mary Anne Phillips and Robert C. Phillips, Plaintiffs,

v.

STURM, RUGER AND CO., INC., Olin Corporation, and Ram Line, Inc., Defendants.

No. 95 Civ. 4576(HB).

United States District Court, S.D. New York.

March 4, 1996.

Leon Segan, New York City, Laurence Shanahan, Lon Seidman, Newman & Harrington, P.C. (of counsel), for Plaintiffs.

Daniel P. Jaffe, Jeanine R. Bermel, Husch & Eppenberger, St. Louis, MO, Alphonso D. Brooks, Francesca A. Sabbatino, Armienti, Brooks, DeBellis & Dunphy, New York City, for Defendant Olin Corp.

## OPINION AND ORDER

BAER, District Judge:

This action arises from Colin Ferguson's highly publicized murderous shooting spree on a Long Island Railroad passenger train on December 7, 1993. Plaintiffs seek to hold defendant Olin Corporation liable based on its design, manufacture, marketing and sale of "Black Talon" ammunition, which was allegedly used by Ferguson. Black Talon ammunition incorporates a hollow-point bullet that is designed to expand upon impact exposing razor-sharp edges at a 90–degree angle to the bullet. This expansion dramatically increases the wounding power of the bullets. Unfortunately, it appears that the Black Talon ammunition functioned exactly as designed in this tragic occurrence.

Plaintiffs base their complaint on various theories of negligence and strict liability. Olin moves to dismiss the complaint in its entirety pursuant to Rule 12(b)(6). Two decisions by the New York Supreme Court recently addressed similar claims and held that they did not state a cause of action. *See Pekarski v. Donovan,* No. 95–1176, slip op. (N.Y.Sup.Ct. Oneida County Sept. 27, 1995); *Forni v. Ferguson,* No. 132994/94, slip op. (N.Y.Sup.Ct. New York County Aug. 2, 1995). For the reasons that follow, I agree and grant Olin's motion.

### Discussion

■ A motion to dismiss pursuant to Rule 12(b)(6) should be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Furthermore, the Court must "accept as true the factual allegations of the Complaint" and "read the Complaint liberally, drawing all inferences in favor of the pleader." *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052 (2d Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994).

### I. Negligence

■ Plaintiffs first claim that Olin negligently manufactured and marketed the Black Talon ammunition. *Complaint,* ¶ 117. To state a claim for negligence under New York law, a plaintiff must demonstrate that the defendant owed her a duty of care. *Strauss v. Belle Realty Co.,* 65 N.Y.2d 399, 402, 492 N.Y.S.2d 555, 557, 482 N.E.2d 34, 36 (1985); *Pulka v. Edelman,* 40 N.Y.2d 781, 782, 390 N.Y.S.2d 393, 394, 358 N.E.2d 1019, 1020 (1976). "In the absence of a duty, there is no breach and without a breach there is no liability." *Id.* The existence of a legal duty is a question of law for the court to determine. *Purdy v. Public Administrator,* 72 N.Y.2d 1, 8, 530 N.Y.S.2d 513, 515–516, 526

N.E.2d 4, 6–7 (1988). Both of plaintiffs' negligence theories fail because defendant owed no duty to the plaintiffs to protect them from criminal misuse of the Black Talon ammunition.

### A. Negligent Manufacturing

■ Plaintiff's negligent manufacturing claim alleges that Olin breached a duty because it was foreseeable that criminals would use the Black Talon ammunition to injure innocent people such as the plaintiffs. *Complaint,* ¶ 117. While this factual allegation of foreseeability may be true, and for purposes of this motion it must be treated as such, the legal conclusion of negligence does not follow. The New York Court of Appeals has held that foreseeability must be distinguished from duty. *Pulka,* 40 N.Y.2d at 785, 390 N.Y.S.2d at 396, 358 N.E.2d at 1022 ("Foreseeability should not be confused with duty."). The issue of foreseeability is only relevant in determining the scope of a preexisting duty; it is not normally used to create a duty. *Id.; see also Strauss,* 65 N.Y.2d at 402, 492 N.Y.S.2d at 557, 482 N.E.2d at 36 ("Duty in negligence cases is defined neither by foreseeability of injury nor by privity of contract.") (citation omitted).

■ Plaintiffs' argue that because Olin could have foreseen criminal misuse of its product, it should not have manufactured the ammunition. Plaintiffs do not allege, however, that any special relationship existed between Olin and Ferguson that would give Olin the authority and ability to control Ferguson's actions. In the absence of such a relationship, New York courts do not impose a duty to control the actions of third parties. *Purdy,* 72 N.Y.2d at 8, 530 N.Y.S.2d at 516, 526 N.E.2d at 7; *Pulka,* 40 N.Y.2d at 783–85, 390 N.Y.S.2d at 395–96, 358 N.E.2d at 1021–22. Furthermore, in determining the existence of a duty, New York courts attempt to limit the scope of potential liability to a controllable degree in an effort to protect defendants from infinite liability exposure. *See Strauss,* 65 N.Y.2d at 402, 492 N.Y.S.2d at 557, 482 N.E.2d at 36; *Pulka,* 40 N.Y.2d at 786, 390 N.Y.S.2d at 397, 358 N.E.2d at 1023. To impose a duty on Olin to prevent criminal misuse of its products would make it an insurer against such occurrences. Such liability exposure would be limitless and thus to impose a duty here would be inappropriate.

I am sympathetic to plaintiffs implications that Olin was under a moral duty not to produce ammunition with the destructive capabilities of the Black Talon bullets. In setting the scope of legal duty, however, the New York Court of Appeals has held that "[a] person may have a moral duty to prevent injury to another, but no legal duty." *Pulka,* 40 N.Y.2d at 786, 390 N.Y.S.2d at 396, 358 N.E.2d at 1022. As I can find no grounds upon which to base a legal duty, plaintiffs' negligent manufacturing claim must be dismissed.

### B. Negligent Marketing

Plaintiffs allege that defendant was negligent in marketing the Black Talon ammunition to the general public. *Complaint,* ¶ 117. Plaintiffs argue that sales of the ammunition should have been limited to law enforcement agencies, as was allegedly Olin's original plan. *Pl.'s Mem.* at 20.

■ First, plaintiffs contend that advertisements for the Black Talon bullets highlighted their destructive capabilities and therefore made them attractive to criminals. *Pl.'s Mem.* at 20. The advertisements do emphasize symbolically those qualities of the Black Talon ammunition that distinguish it from other products on the market. Plaintiffs, however, do not allege that these advertisements are false or misleading. Therefore, to hold that the advertisements were negligent would in effect hold defendant liable for the manufacture of the product with these distinguishing characteristics. This I have already refused to do.

■ Next, plaintiffs claim that the act of marketing a product creates a duty running from the manufacturer to all those affected by the use of the product marketed. *Pl.'s Mem.* at 20–21. Quoting the Michigan Supreme Court in *Moning v. Alfono,* 400 Mich. 425, 433, 254 N.W.2d 759, 762 (1977), plaintiffs argue that " '[i]t is now well established that the manufacturer and wholesaler of a product, by marketing it, owe a legal duty to those affected by its use.' " *Pl.'s Mem.* at 21.

*Moning* held that a manufacturer of slingshots may be liable to a child who lost an eye due to the negligence of his playmate.

Plaintiffs' reliance on *Moning*, however, is misplaced because that case is distinguishable both legally and factually. Legally, the *Moning* court followed a different rule on the issue of duty than is applied in New York. Under Michigan law, the question of the existence of a duty depends in part on foreseeability. *Moning,* 400 Mich. at 439, 254 N.W.2d at 765. In contrast, as noted above, New York law considers issues of duty and foreseeability as distinct inquiries in negligence cases. As I must apply New York law, *see Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), *Moning*'s finding of a duty based on considerations of foreseeability fails to carry the day.

Factually, *Moning* is also distinguishable because central to the court's analysis was the fact that the plaintiff was a child. The court specifically noted that the common law had long recognized special rules applicable to children. *Moning,* 400 Mich. at 443–45, 254 N.W.2d at 767–69. The plaintiff there did not "contend that manufacturing and marketing slingshots is negligence per se. His contention, rather, [was] that marketing them directly to children creates an unreasonable risk of harm." *Moning,* 400 Mich. at 443, 254 N.W.2d at 767. The *Moning* court agreed, relying on the doctrine of negligent entrustment as stated in Restatement (Second) of Torts § 390.[1] Here, plaintiffs argue that marketing Black Talon ammunition to the general public breached a duty flowing from manufacturers to those affected by use of the ammunition. Restatement (Second) § 390, however, limits the negligent entrustment theory to those people a reasonable person would consider lacking in ordinary prudence. To extend this theory to the general public would be a dramatic change in tort doctrine. It would imply that the general public lacks ordinary prudence and thus undermine the reasonable person concept so central to tort law. The common law has not yet adopted a negligent entrustment rule for the protection of the general public. I decline to adopt one here.

## II. Strict Liability

Plaintiffs also argue that Olin should be held strictly liable for their injuries because the Black Talon ammunition was defectively designed and the design and manufacture of the bullets was an ultrahazardous activity.

### A. Design Defect

To state a claim for strict products liability, a plaintiff must show that the product was defective. *See Voss v. Black & Decker Manufacturing Co.,* 59 N.Y.2d 102, 106, 463 N.Y.S.2d 398, 401, 450 N.E.2d 204, 207 (1983); *Robinson v. Reed–Prentice,* 49 N.Y.2d 471, 478, 426 N.Y.S.2d 717, 720, 403 N.E.2d 440, 443 (1980). New York law recognizes three types of product defects: mistake in manufacturing, improper design, and inadequate warnings for the use of the product. *Id.* Here, plaintiffs contend that the Black Talon ammunition was defectively designed in that the expansion of the bullets enhances and aggravates injuries. In addition, plaintiffs allege that the bullets' utility does not outweigh their risk. *Pl.'s Mem.* at 16–19; *see also Complaint* ¶¶ 196–97 (alleging strict liability based on production and marketing of Black Talon ammunition that expands on impact and that is capable of being used in large capacity magazines). I reject both of these arguments because the expanding design of the Black Talon ammunition was a functional element of the design of an inherently dangerous product.

Plaintiffs rely on *Bolm v. Triumph Corp.,* 33 N.Y.2d 151, 158–59, 350 N.Y.S.2d 644, 650–52, 305 N.E.2d 769, 773–74 (1973), where the Court of Appeals found that a manufacturer can be strictly liable for a design defect that causes either an initial injury or that

---

1. Section 390 states:
   One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them. Restatement (Second) of Torts § 390.

enhances injuries initially caused by another force. *Bolm* involved a parcel grid defectively placed on a motorcycle such that it aggravated the injuries sustained by the rider in a collision with a car. Here, the Black Talon ammunition allegedly caused more damage than ordinary, non-expanding ammunition would have caused. In addition, large capacity magazines allow users to fire more bullets before they need to reload, thus potentially prolonging a criminal shooting spree.

*Bolm* is inapposite, however, because the Black Talon ammunition was, like all ammunition, designed to cause injuries. To hold Olin strictly liable for aggravation of injury potentially would subject all ammunition manufacturers to similar liability. The amount of damage caused by a bullet is directly related to, among other variables, its size, and thus its design. Under plaintiffs' theory, every person injured by a bullet would be able to claim that if the bullet had been smaller, there would have been less damage and accordingly, the manufacturer should be strictly liable based on that design defect.

Plaintiffs next argue that the Black Talon ammunition fails the risk/utility analysis applied by the Court of Appeals to determine whether a design is defective. *See Robinson*, 49 N.Y.2d at 479, 426 N.Y.S.2d at 720, 403 N.E.2d at 443 (citing Restatement (Second) of Torts § 402A). In *Robinson*, however, the court noted that certain products, such as knives, are inherently dangerous and "must by there very nature be dangerous in order to be functional." *Robinson*, 49 N.Y.2d at 479, 426 N.Y.S.2d at 720, 403 N.E.2d at 443. I find that this exception applies to the Black Talon ammunition. Risk/utility analysis is inappropriate because the risks arise from the function of the product, not any defect in the product. *See Forni*, slip op. at 9.[2]

Plaintiffs' design defect arguments are better addressed to the Legislature, which has primary regulatory authority over the manufacture and sale of ammunition. As long as the Legislature permits the manufacture of ammunition, a common law court should not distinguish between different designs and the amount of injury particular bullets cause in judging whether they are defectively designed.

Plaintiffs have failed to allege the existence of any defect in the Black Talon ammunition. Accordingly, their design defect claim must be dismissed.

### B. Ultrahazardous Activity

Plaintiffs allege that Olin's design and manufacture of the Black Talon ammunition constituted an abnormally dangerous and ultrahazardous activity because the ammunition is an inherently dangerous product. *Complaint*, ¶¶ 261, 263, 265. Defendant argues that the doctrine of ultrahazardous activity does not apply to products; rather, it is limited to activities involving the use of land. *Def.Mem.* at 13–15 (citing, e.g., *Doundoulakis v. Town of Hempstead*, 42 N.Y.2d 440, 398 N.Y.S.2d 401, 368 N.E.2d 24 (1977)). This theory appears to be correct, *see Forni*, slip op. at 10 ("Courts have imposed absolute liability almost exclusively for ultrahazardous activity involving the use of land."), and plaintiffs do not contest it. Instead, plaintiffs argue that the ammunition is unreasonably dangerous per se. *Pl.Mem.* at 21–23.

In *Halphen v. Johns–Manville Sales Corp.*, 484 So.2d 110, 114 (La.1986), the Supreme Court of Louisiana held that a product is unreasonably dangerous per se "if a reasonable person would conclude that the danger-in-fact of the product, whether foreseeable or not, outweighs the utility of the product."[3] This is essentially a risk/utility

---

2. In *Voss*, the Court of Appeals approved the use of risk/utility analysis to determine whether a safety guard on a circular power saw was defectively designed, even though the saw was inherently dangerous. *See Voss*, 59 N.Y.2d at 108–10, 463 N.Y.S.2d at 402–03, 450 N.E.2d at 208–09. However, the safety latch was unrelated to the function of the saw itself. I do not believe that the court would have applied risk/utility analysis to determine whether the saw blade was defec-

tively designed because it was too sharp and thus aggravated the plaintiff's injuries. That defect would be more analogous to the facts here.

3. It should be noted that the *Halphen* decision was legislatively overruled. *See Young v. Logue*, 660 So.2d 32, 52 (La.Ct.App.) (citing La. R.S. 9:2800.51 et seq.), *writ denied*, 664 So.2d 443, 444 (La.1995).

analysis. As discussed above, I do not believe that the New York Court of Appeals would apply risk/utility analysis to the Black Talon ammunition. Therefore, plaintiffs' claim based on a theory that the ammunition is unreasonably dangerous per se must be rejected.

### III. Causation

■ To state a claim in either negligence or strict liability a plaintiff must demonstrate that the defendant's breach was the proximate cause of her injuries. *See Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 434 N.Y.S.2d 166, 414 N.E.2d 666 (1980) (negligence); *Voss*, 59 N.Y.2d at 109, 463 N.Y.S.2d at 403, 450 N.E.2d at 209 (strict liability). Defendant argues that plaintiffs' claims must be dismissed for the separate reason that Ferguson's actions constitute the proximate cause of plaintiffs' injuries. Plaintiffs argue that Ferguson's acts were foreseeable, and thus the issue of proximate causation should be left for the finder of fact to resolve. *Pl.Mem.* at 14–16.

■ In general, questions of whether an intervening act severs the chain of causation depend on the foreseeability of the intervening act and should be determined by the finder of fact. *See Derdiarian*, 51 N.Y.2d at 312, 315, 434 N.Y.S.2d at 167, 169, 414 N.E.2d at 668, 670. However, in appropriate circumstances, the court may resolve the issue as a matter of law. *Id.*, 51 N.Y.2d at 315, 434 N.Y.S.2d at 167, 414 N.E.2d at 670. "Those cases generally involve independent intervening acts which operate upon but do not flow from the original" breach. *Id.* In *Jantzen v. Leslie Edelman of New York, Inc.*, 206 A.D.2d 406, 614 N.Y.S.2d 744 (2d Dep't 1994), the Appellate Division held that the seller of a shotgun could not be liable in a wrongful death action because the acts of the killer were the sole proximate cause of the injuries. "The sale of a shotgun merely furnished the condition for the unfortunate occurrence." *Id.*, 206 A.D.2d at 406–07, 614 N.Y.S.2d at 745. Here, as the *Forni* court found, "Ferguson's conduct was an extraordinary act which broke the chain of causation." *Forni*, slip op. at 14. Therefore, plaintiffs' complaint fails to state a claim in either negligence or strict liability.

### Conclusion

Plaintiffs candidly argue that I should expand existing tort doctrines to cover this case, thus implicitly recognizing that as the law stands today they have failed to state a claim. *See Pl.'s Mem.* at 10. As noted above, however, their claims seek legislative reforms that are not properly addressed to the judiciary. Like Justice Schlesinger wrote in *Forni*, slip op. at 14, I too would work to ban ammunition like the Black Talon if I was a member of the New York legislature. As judges, though, we both are constrained to leave legislating to that branch of government.

For the reasons discussed above, defendant Olin's motion to dismiss the complaint is GRANTED.

SO ORDERED.