OPINION OF THE COURT
John P. Colangelo, J.
During the evening of November 21, 2011 plaintiff Donovan James was shot on Liberty Street in Newburgh, New York by defendant Robert McKenzie. Plaintiff brought this action seeking compensation for injuries he sustained as a result of the shooting. McKenzie defaulted in answering the complaint herein and is currently serving a state prison sentence.
It is undisputed that prior to the shooting, McKenzie had been sitting at the bar of defendant Terrace Tavern, LLC (the Tavern or the Bar), with a gun concealed in his pocket. Plaintiff does not allege that either the Tavern or its landlord, defendant Pro 13 Properties, LLC knew or had reason to know that McKenzie was carrying a firearm when he entered the Tavern. It is also undisputed that plaintiff testified during his examination before trial that he “never went inside” the Tavern on November 21, but was “standing outside ... on the pavement” (James deposition testimony at 24, exhibit G to defendant’s motion papers). Plaintiff now claims in his papers in opposition to the instant motion that he opened the door to the Tavern, spotted McKenzie, and immediately left and headed down the street. McKenzie left the Tavern, gave chase, and shot plaintiff on Liberty Street (James aff in opposition at 3-4).
McKenzie’s liability in tort is unquestioned and effectively established for purposes of this action. However, plaintiff seeks to hold not only McKenzie, but the Tavern and its landlord, Pro 13, responsible for the shooting, and seeks compensation from them as well. The Tavern and Pro 13 (collectively the defendants) have interposed the instant motion for summary judgment to dismiss the complaint against them. As explained below, defendants’ motion is meritorious and the complaint against them must be dismissed.
The Complaint
The complaint sets forth five causes of action. The first cause of action is directed against defendant McKenzie and is not a subject of the instant motion. The second and third causes of action are directed against the Tavern, and the fourth and fifth against the landlord, Pro 13. Both the third and fifth causes of action purport to be based upon General Obligations Law § 11-101, *472 commonly known as the Dram Shop Act. In essence, this statute imposes civil liability upon a seller of alcohol if the person to whom the alcohol is sold is or becomes intoxicated and injures another. However, plaintiff appears to have abandoned his Dram Shop Act claims since no facts have been adduced by him in opposition to the instant motion that would support any cause of action under the Dram Shop Act. Specifically, plaintiff has made no evidentiary showing that McKenzie was intoxicated at the time of the shooting or that he had been served any alcohol by the Tavern—conditions precedent for the imposition of Dram Shop Act liability under the clear terms of General Obligations Law § 11-101:
“1. Any person who shall be injured in person, property, means of support, or otherwise by any intoxicated person, or by reason of the intoxication of any person, whether resulting in his death or not, shall have a right of action against any person who shall, by unlawful selling to or unlawfully assisting in procuring liquor for such intoxicated person, have caused or contributed to such intoxication.”
Accordingly, the Dram Shop Act causes of action are insufficient as a matter of law and must be dismissed. (See Zuckerman v City of New York, 49 NY2d 557 [1980] [once the moving party has sustained its burden of making a prima facie showing of entitlement to summary judgment, the burden shifts to the opposing party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985].)
The Remaining Causes of Action
The remaining causes of action against each of the defendants sound in general negligence and, given the circumstances present herein, must perforce be predicated upon a theory of premises liability—that is, upon a general claim that defendants failed to fulfill their common-law duty of maintaining a safe premises. Plaintiff appears to so contend in his opposition to the instant motion. However, as the facts adduced on this motion by both parties show, plaintiffs argument suffers from a fatal flaw: McKenzie’s actions and the resulting injury to plaintiff occurred on the public street outside of the Tavern. While plaintiff initially alleged in his complaint, and repeated in his bill of particulars, that the shooting occurred inside the Tavern itself, discovery revealed that plaintiff was shot on the pub- *473 lie street and may never have entered the Tavern in the first place. (See discussion infra at 473.)
Moreover, no facts have been adduced to show that there was any disturbance in or immediately outside the Tavern until McKenzie discharged his weapon. In other words, as defendants correctly point out, plaintiff has adduced no evidence that on the night in question the Tavern premises itself were unsafe. While the Terrace Tavern may not have been, to put it mildly, a place for quiet reflection—apparently, as plaintiff maintains, several altercations have taken place at that location within the past several years—there was no indication that prior to the instant incident, any untoward, much less dangerous activity was ongoing; plaintiff adduced no evidence of calls to law enforcement or medical personnel on the evening of November 21 until plaintiff was shot on Liberty Street.
Thus, stripped to its essence, plaintiffs complaint appears to rest upon a slender thread: an attempt to expand the limited common-law duty of a business and its landlord to provide a hazzard-free physical environment for its customers and workers to an all encompassing duty to insure that the customers themselves pose no danger not only to others within the establishment, but to those on the public street as well. Plaintiff cites no law in direct support of this novel contention, but instead relies on general citations to cases relating to environmental and safety issues specific to internal aspects of the premises themselves. {See cases cited at 2-4 of plaintiffs aff in opposition; discussion infra at 477.) The unstated but apparent reason behind such indirection is clear: no such common-law duty exists. Bar owners and their landlords do not stand in loco parentis to their customers, responsible for supervising and controlling their behavior in and outside the bar other than to monitor their consumption of alcohol under pain of possible Dram Shop Act liability. As discussed below, the pertinent case law so indicates.
Discussion and Conclusions
It is undisputed that the conduct that gave rise to plaintiffs injury took place not in the Bar, but on the public street. Plaintiff himself admits as much in his affidavit sworn to on September 28, 2014 and submitted in opposition to defendant’s motion:
“3. I entered the bar, at which point I saw defendant, ROBERT MCKENZIE, along with a few other people, who I believed intended to hurt me.
*474 “4. When I saw them, I immediately turned around and left the bar but I was followed out of the bar by defendant, ROBERT MCKENZIE, and those other individuals. At that point immediately outside the bar, I was shot by MR. MCKENZIE.”
Indeed, based upon plaintiffs own rendition of the facts in prior deposition testimony, it is unclear whether plaintiff even set foot—or, at most, little more than one foot—inside the Tavern on the night at issue. As plaintiff testified in his deposition (exhibit G to defendants’ motion papers at 24): “A. I never went inside the Terrace Lounge, I was standing outside, so just maybe—I never even touched the rug inside of there, I was outside on the pavement.” In addition, in the police report of the shooting, the responding officer recounted a conversation with plaintiff at the hospital where plaintiff was treated in which plaintiff stated that “I was walking down Liberty St. and I got shot” (exhibit B to defendants’ motion papers).
Whether plaintiff briefly stepped into the Tavern or not, his own statements establish that he was shot not there, but on the public street. Such admissions effectively take him out of court. Even assuming, arguendo, that the common law imposes some broad, general duty upon a bar owner to control or maintain the behavior of its patrons within its facility—a proposition for which plaintiff cites no authority—such duty would clearly stop at the barroom door. In addition, the mere fact that McKenzie, apparently unbeknownst to defendants, brought a gun into the Tavern is of no moment. Neither the common law nor, for that matter, the State Liquor Authority imposes any obligation upon a bar owner, much less the bar’s landlord, to have potential patrons run the gauntlet of a metal detector, frisk, and/or body search as a condition of entry.
In other words, the attempt by plaintiff—not a customer, but at best a momentary visitor to the Tavern—to hold the Tavern and its landlord responsible for regulating a bar customer’s behavior, as well as to impress upon such parties a more general responsibility toward a virtual stranger to the establishment, is meritless; there is no such duty as a matter of law. Indeed, the law is clear that in order to impose such dual responsibilities upon them, the landlord and business owner must have some special relationship with each such party: with the bar patron, a relationship that would require each of them to regulate such *475 patron’s behavior, inside the bar and out; and with a member of the public, a unique connection that would compel such parties to take affirmative steps to protect him or her. (See Pulka v Edelman, 40 NY2d 781, 783 [1976].) Except for the responsibility imposed by statute or regulation—namely, the Dram Shop Act’s proscription against customer intoxication and its consequences, as well as any regulations prescribed by the State Liquor Authority regarding in-premises bar operations—no such duty exists with respect to either potential class of plaintiffs in the context of the situation present herein. The case law so shows.
For example, in the Court of Appeals case of Muniz v Flohern, Inc. (77 NY2d 869, 870 [1991]), an infant plaintiff standing outside of a store located on defendant landlord’s premises was blinded by shotgun pellets discharged by a robber from inside the store; she sought to hold the landlord responsible for her injuries. The Court refused, holding that the landlord was entitled to summary judgment dismissing the complaint despite the fact that the landlord had been made aware that its tenant was engaging in illicit drug trafficking actively on the premises, yet made no attempt to stop it. As the Court reasoned, no special relationship existed between the landlord and either plaintiff or the gunman that would impose upon the landlord a duty to regulate the assailant’s conduct. As the Court held:
“We conclude . . . that under the circumstances of this case the defendants owed no duty to the infant plaintiff. Thus, no liability for the injuries can be imposed.
“There was no relationship between defendants and the gunman who robbed the streetfront store of their building. Nor was there any relationship between the attempted robbery and the illicit drug activity such as to require defendants to attempt to control the conduct of either the tenant or the gunman. Moreover, there was no relationship between defendants and the infant plaintiff requiring defendants to afford protection from potential dangers springing from the tenant’s illicit drug trafficking in the streetfront store.” (Id. [emphasis added].)
Similarly, in Waters v New York City Hous. Auth. (69 NY2d 225, 230-231 [1987]), plaintiff sought to hold the landlord responsible for injuries incurred by plaintiff pedestrian as a result of a robbery and rape that began when plaintiff was walking on the sidewalk in front of defendant’s building and *476 completed when plaintiff was forcibly taken inside the building through an unlocked front door. Plaintiff maintained that in view of the prevalence of crime in the neighborhood, of which the landlord was surely aware, the door to the building should have been locked. The Court held that while defendant landlord may well have been aware that the building was located in a high crime neighborhood, that awareness alone did not impose upon it a duty to mere passers-by. No special relationship existed between the landlord and plaintiff, much less between the landlord and the still-at-large robber, which would trigger such an obligation. As the Court held:
“Because defendant landowner had no relationship at all to the as-yet-unidentified wrongdoer whose presence on the street posed a threat to plaintiffs safety and because this injured plaintiff had no association with the premises independent of the crime itself the landowner’s duty to maintain the security of the building may not be deemed to extend to her. This conclusion alone is fatal to her claim, regardless of whether the ultimate harm could be found to be reasonably foreseeable. Accordingly, the complaint was properly dismissed and the order appealed from should be affirmed.” (Id. [citations omitted and emphasis added]; see also Rodriguez v Oak Point Mgt., 87 NY2d 931, 932 [1996] [“(Defendant had no duty to secure the front door of the residential apartment building it owned and operated in order to protect passersby from the threat of criminal actions by individuals engaging in drug-related activity in or around the building”].)
And in Pulka v Edelman (40 NY2d 781, 784 [1976]), the Court of Appeals, in a situation analogous to the facts that obtain herein with respect to the Tavern, held that a parking garage was not responsible for injuries to a pedestrian struck on a public street by a car driven by a garage customer. In so holding, the Court drew a sharp distinction between the responsibility of a business for the acts of its employees as opposed to the absence of any such duty for the conduct of members of the public who happen to frequent the business establishment:
“The relationship of the garage to pedestrians is, however, at best somewhat tenuous. The garage obviously owes a duty to protect pedestrians from the acts of its own employees when driving a patron’s vehicle across the path of pedestrians. On the other *477 hand, it would be most unfair to impose that duty on the garage with respect to acts of its patrons. A duty to prevent such negligence should not be imposed on one who does not control the tort-feasor(Id. [emphasis added]; see also D'Amico v Christie, 71 NY2d 76 [1987].)
The cases cited by plaintiff herein are not to the contrary and instead either pertain to the general duty of a property owner to provide a physically safe environment to those invited to enter its premises (see Backiel v Citibank, 299 AD2d 504 [2d Dept 2002], and Basso v Miller, 40 NY2d 233 [1976], cited at 3-4 of plaintiffs aff in opposition) or grant summary judgment to defendant property and business owners in situations similar to the instant case. (See Bryan v Crobar, 65 AD3d 997 [2d Dept 2009], Maheshwari v City of New York, 2 NY3d 288 [2004], Cayo v Supermarkets Gen. Corp., 247 AD2d 421 [2d Dept 1998], Lind v Suffolk County Water Auth., 251 AD2d 295 [2d Dept 1998], and Jacqueline S. v City of New York, 81 NY2d 288 [1993], cited at 2-4 of plaintiffs aff in opposition.)
The rationale of the Court of Appeals cases of Muniz, Ortiz, Waters and Pulka effectively dispose of the instant motion and compel dismissal of the complaint herein. Here, as in Muniz, Ortiz, and Pulka, even though defendant business and property owners may well have known that dangerous activity was periodically afoot in the vicinity of the Tavern, they had no obligation—much less the ability—to control the behavior of third parties who happened to enter their premises and thereby protect members of the general public from harm that emanated therefrom. And in Pulka, as in the instant case, the same result obtained when such third party “tort-feasor” whom the business owner “[did] not control” left the business location only to wreak havoc on the public street—precisely what McKenzie did here. Defendants here had no greater control over McKenzie than the garage owner in Pulka and are, as with such garage owner, equally blameless under the common law of torts.
Parenthetically, the court notes that plaintiffs contention that defendants’ apparently inadvertent failure to include a copy of their answer and amended answer to plaintiff’s complaint with their initial motion papers compels a denial of defendants’ motion is meritless. Aside from the fact that in addressing a summary judgment motion, the court is entitled to search the entire record and may freely take judicial notice of the contents of its own file, defendants promptly cured any er *478 ror by annexing the answer and amended answer—served upon plaintiffs counsel over one year ago—to their reply papers on the instant motion. Under these circumstances a denial—even without prejudice—of defendants’ meritorious summary judgment motion solely on such procedural grounds, as plaintiff suggests, would amount to nothing more than a waste of the resources of the court and the parties. (See Quinones v Caballero, 10 Misc 3d 486 [Sup Ct, Bronx County 2005].)
Accordingly, for all the foregoing reasons, defendants’ motion for summary judgment is granted in all respects and the complaint against them is dismissed.