■ AMOS S. HOGG et al., Respondents-Appellants, v. STATE OF NEW YORK, Appellant-Respondent. (Claim No. 49457.) — Cross appeals from a judgment in favor of claimants in the sum of $17,950 plus interest, entered May 2, 1972, upon a decision of the Court of Claims, following the fee taking of 9.607 acres north of State Route 17 and lying between it and the Susquehanna River in the Town of Owego, Tioga County. Claimants owned a dairy farm, the major part of which was situated south of Route 17. In 1962, the State appropriated 2.181 acres representing that portion of an abandoned railroad right of way crossing claimants' property. The remaining parcels, 7.063 acres between the railroad right of way and the river (Parcel No. 241) and .363 acre between the right of way and the former Route 17 boundary (Parcel No. 240), were appropriated in 1966. In 1881, the New York, Lackawanna & Western Railway Company acquired by condemnation, pursuant to chapter 140 of the Laws of 1850, a 99-foot strip running east and west across the farm parcel in question when it was owned by Augustus Olmstead. In 1884 he conveyed the farm to his son by a deed containing the following clause: "Excepting that portion of said premises taken by the State of New York for the Chenango Canal Extension and also that portion of said premises taken by the N. Y. Lackawanna & Western Railroad Company for Railroad purposes & ⅜ of an acre sold to Avery Olmstead." Thereafter by several mesne instruments and ultimately by a 1948 deed, each containing substantially the same proviso, title passed to claimants. The railroad continued to use the right of way until 1960, and in 1962 the State appropriated this right of way by filing a map in the Tioga County Clerk's Office, without notice to claimants. When the railroad condemned the strip of property pursuant to section 18 of chapter 140 of the Laws of 1850, it acquired "not a fee title, but merely an easement" (*O & W Lines v. St. John*, 20 N Y 2d 17, 20). The State contends that when the railroad abandoned its site, possession of the property reverted to the one from whom it was taken and, consequently, claimants did not have title thereto. Every instrument creating or transferring an estate or interest in real property must be construed according to the intent of the parties, so far as such intent can be gathered from the whole instrument, and is consistent with the rules of law (Real Property Law, § 240, subd. 3; *Loch Sheldrake Assoc. v. Evans*, 306 N. Y. 297, 304) and, when the language used in a conveyance is susceptible of more than one interpretation, the courts will look at the intent of the parties to the transaction as manifested by surrounding circumstances existing at the execution of the deed, the situation of the parties, the subject matter of the instrument and the manner of use and enjoyment under the grant (*Wilson v. Ford*, 209 N. Y. 186, 196; *Erlu Realty Development v. State of New York*, 43 A D 2d 301, 305; *Weigold v. Bates*, 144 Misc. 395, 398; 2 Warren's Weed, New York Real Property [4th ed.], Easements, § 4.03; Exceptions and Reservations, § 1.05). It is inconceivable that Augustus Olmstead, in conveying his farm to his son, intended to retain

title to land without access, which he would not enjoy and which he would only be saving for his distributees or legatees. There is no evidence that the father ever purported to convey the land used by the railroad or that his successors (other than said grantee) ever made claim to such premises. Furthermore, an exception or reservation in a deed is to be taken most favorably to the grantee and, if there is uncertainty or ambiguity in the language and in the absence of contrary proof, he should have the benefit of the doubt or ambiguity (*Blackman* v. *Striker*, 142 N. Y. 555, 560). Accordingly, the Court of Claims had the right to conclude that it was not the intent of the parties that Augustus Olmstead retain title to the long narrow strip subject to the railroad right of way. An exhibit in evidence reveals that in 1868 the State of New York appropriated a strip of land across the subject property for the purpose of construction of the Chenango Canal Extension. Apparently, the venture was not successful since the Laws of 1880 (ch. 551, § 1) provided that the State's right, title and interest in the canal property, with exceptions not applicable, "shall revert to and is hereby granted and released to and vested in the person or persons owning the lands adjoining, to the center line of said canal * * * upon the condition precedent that such owner or owners shall, by an instrument * * * release and discharge the State from all obligation". Other exhibits indicate the filing on October 2, 1880 of the release of Augustus Olmstead, the then owner of record of the lands adjoining. Thus, the Court of Claims could properly find that any interest acquired by the State in 1868 was extinguished. The reason for including in the 1884 deed exception "that portion of said premises taken by the State of New York for the Chenango Canal Extension" is not clear, the interest of the State having been abolished. It is inconceivable, however, that it was the grantor's intention to retain title to the canal area while disposing of the abutting premises and the State has failed to point to any others who might hold title to said strip or to reveal what portion of the parcel in question made up the strip. Thus, the trial court could find on the record, as it did, that claimants were the sole owners of the 9.607 acres lying between Route 17 and the river. It further found that 2.6 acres * thereof were at grade with the highway and that the highest and best use of the frontage at grade was for commercial development, that of the balance being for agricultural use or as a source of topsoil, and the value of the property was determined accordingly. The proof, however, indicates that the appropriated property was approximately 959 feet wide, 75 feet of the width on the east having been zoned as industrial and 884 of the width on the west as agricultural. Although a reasonable probability of a zoning change would be a relevant factor in determining value, such a probability must be based on sufficient evidence and not mere speculation (*Comstock* v. *State of New York*, 39 A D 2d 790) and the burden of proving such a reasonable probability at the time of taking is on the claimant (*Ridgefield Realty Corp.* v. *State of New York*, 42 A D 2d 807). Although there has been a showing of general growth in the region and the development of about 400 homes adjacent to part of claimants' property, there has been no demonstration of a reasonable probability of rezoning the subject premises as commercial by evidence of items such as the issuance of variances for commercial purposes, a study of or demands for zoning revision or the enactment of amendments of the zoning ordinance permitting commercial use before or

---

* It is obvious that this figure was arrived at by adding the acreage of Parcel No. 240 (.363) to that of the former railroad right of way (2.181), which combined acreage constituted the frontage along Route 17.

after appropriation (see *Masten* v. *State of New York,* 11 A D 2d 370, 371–372, affd. 9 N Y 2d 796). Since some portion of the 2.6 acres at grade was zoned industrial and the balance agricultural, but without specification in the record of the respective acreages, and the proof fell far short of showing a "condition and continuing trend that rendered early rezoning very nearly inevitable" (*Comstock* v. *State of New York, supra; Masten* v. *State of New York, supra,* p. 372), we must reject that part of the court's evaluation based upon the consideration of the 2.6 acres as commercially developable. However, since the State failed to place any value whatsoever on the 2.181 acres covered by the former railroad right of way, there should be a reversal and new trial (cf. *Hogan* v. *State of New York,* 41 A D 2d 428; *Ridgeway Assoc.* v. *State of New York,* 32 A D 2d 851). Judgment reversed, on the law and the facts, and a new trial ordered, without costs. Herlihy, P. J., Staley, Jr., Cooke, Sweeney and Kane, JJ., concur.

