Trevor CARDINAL, Plaintiff.

v.

**LONG ISLAND POWER AUTHORITY,** Long Island Lighting Company, Keyspan Energy Corporation, Keyspan Generation LLC, the Brooklyn Union Gas Company, Town of North Hempstead and Stanley Irwin, Defendants.

**TIG** Insurance Company, Plaintiff,

v.

Stanley Irwin, Jr. and Jill Irwin, Trevor Lee Cardinal, Town of North Hempstead, Long Island Power Authority d/b/a/ Lipa, Long Island Lighting Company, Keyspan Energy Corporation, Keyspan Generation LLC, the Brooklyn Union Gas Company, Derik Irwin, Derek Irwin d/b/a Spectrum Realty, Stanley Irwin, Jr. d/b/a Spectrum Realty and Spectrum Realty Defendants.

Nos. 99–CV–8182(SJF)(WDW), 00–CV–1517(SJF)(WDW).

United States District Court, E.D. New York.

March 10, 2004.

---

**8.** The Court will not consider the merits of DEC's action except to say that it is not preempted.

D. Daniel Engstrand, Jr., Doniger & Engstrand, Islandia, NY, Leonard Porcelli, Karl, Clerkin, Redmond, Ryan, Perry & Girvan, Mineola, NY, for Plaintiffs.

David Lazer, Lazer, Aptheker, Feldman, Rosella & Yedid, P.C., Melville, NY, Patrick Neglia, Cullen & Dykman, Brooklyn, NY, John W. Hoefling, Kelly, Rode & Kelly, LLP, Mineola, NY, James P. Haggerty, East Norwich, NY, James J. Lynch, Williston Park, NY, Vincent D. McNamara, The Law Office of Vincent D. McNamara, East Norwich, NY, Alan S. Russo, Russo, Keane, Sokoloff & Toner, LLP, New York, NY, for Defendants.

## OPINION & ORDER

FEUERSTEIN, District Judge.

### I. Introduction

On June 26, 1999, Trevor Cardinal and Stanley Irwin, Jr. were discarding a pile of tree limbs and branches down an embankment onto property owned by Keyspan Generation. (Cardinal's Local Civil Rule 56.1 Statement in Reply to Utility Defs.' Mot. para. 35–44). Trevor Cardinal, while standing near the crest of the embankment, was burned when a tree branch he was lifting touched one of LIPA's electric transmission lines located approximately four (4) feet above the embankment's plane and twenty-three (23) feet beyond the top of the embankment's slope. (*Id.* para. 36, 41). This opinion and order addresses several motions filed in two separate actions involving the accident.

### II. Background

#### A. The Parties

##### 1. Action 1—CV–99–8182

Plaintiff Trevor Cardinal ("Cardinal"), a twenty-one (21) year-old male at the time of the accident, was living in rented premises owned by Jill Irwin ("Jill").

Defendant Stanley Irwin, Jr., at the time of the accident, was a real estate broker doing business as Spectrum Realty, who sold, rented, and managed residential and residential properties, some of which were owned by his son Derek and wife Jill. (TIG's Mot. for Summ. J., exh. V, at 13, 255–56, 260, 359). Derek Irwin was the owner of 14 and 14A Rams Hill Road in Glenwood Landing, New York in the defendant Town of North Hempstead (the "Town"). (*Id.*, exh. T, p. 6–7, 11–15).

Cardinal performed various property maintenance duties for Stanley Irwin, Jr., and was compensated by a reduction in rent arrears owed to Jill and/or cash. (TIG's Mot. for Summ. J., exh. V, at 40–41, 53–58).

Defendant Keyspan Generation, LLC ("Keyspan Generation") owns property in Glenwood Landing, New York. (Utility Defs.' Not. of Mot. for Summ. J., exh. G).

Defendant Long Island Power Authority ("LIPA") owns an electric transmission and distribution facility on Keyspan Generation's property. (*Id.*, exh. H, sec. 3.1). Its transmission lines, which traverse the Keyspan Generation property, run parallel to the side of a steep embankment which is adjacent to Rams Hill Road, a street owned by defendant Town of North Hempstead. (Utility Defs.' Local Civil Rule 56.1 Statement at 2–3; Town's Local Civil Rule 56.1 Statement para. 3, 6).

Defendant Town of North Hempstead (the "Town") has a ten (10) foot right of way from the curb of Rams Hill Road to the crest of the embankment bordering Keyspan Generation's property. (Cardinal's Local Civil Rule 56.1 Statement in Opp'n to Town's Mot. para. 8).

Defendant Brooklyn Union Gas Company ("BUG") owns and operates a gas distribution system in New York City under the name of Keyspan Energy Delivery New York. (Macklin Aff., annexed to Neg-lia Reply Aff. in Opp'n to Cardinal's Cross–Mot.).

Defendant Keyspan Energy Corporation ("Keyspan Corp.") is a subsidiary holding company. (Bereche Aff., annexed to Neg-lia Reply Aff. in Opp'n to Cardinal's Cross–Mot.).

### 2. Action 2—CV–00–1517

Plaintiff TIG Insurance Company ("TIG") issued a homeowner's insurance policy to defendants Jill and Stanley Irwin, Jr. for the premises at 60 Beechwood Drive, Glen Head, New York. (TIG's Mot. for Summ. J., exh. N).

### B. The Actions

### 1. Action 1—CV–99–8182

Plaintiff Trevor Cardinal has sued Stanley Irwin, Jr., LIPA, LILCO, Keyspan Corp., Keyspan Generation, BUG, and the Town for negligence. (Utility Defs.' Not. of Mot. for Summ. J., exh. A).

### 2. Action 2—CV–00–1517

Plaintiff TIG seeks a declaration that it does not owe any duty to defend or indemnify Jill and Stanley Irwin, Jr. based upon the insurance policy's "business pursuits" exclusion and that the policy does not otherwise afford any coverage for claims arising out of the injuries sustained by Cardinal. (TIG's Mot. for Summ. J., exh. H).

Jill Irwin has defaulted in this action.

### III. The Action 1 Motions

Keyspan Generation, BUG, Keyspan Corp. (collectively, the "utility defendants"), the Town, and Stanley Irwin, Jr. have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing that no duty of care was owed to Cardinal and that the hazard was open and obvious.

## A. Town of North Hempstead

Cardinal claims that the Town was aware that the embankment was being utilized for tree limb disposal and was negligent in failing to prohibit the dumping and failing to warn its residents of the electrical wires located nearby. (Cardinal's Local Civil Rule 56.1 Statement in Opp'n to Town's Mot. para. 6, 13, 15, 17). To be held liable for negligence it must be demonstrated that the defendant owes a duty of care to the plaintiff. *See Pulka v. Edelman*, 40 N.Y.2d 781, 782, 390 N.Y.S.2d 393, 358 N.E.2d 1019 (1976) (citing *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 342, 162 N.E. 99 (1928)).

■ A landowner owes "a duty to exercise reasonable care in maintaining [its] property in a safe condition under all circumstances, including the likelihood of injury to others, the seriousness of the potential injuries, the burden of avoiding the risk, and the foreseeability of a potential plaintiff's presence on the property." *Kurshals v. Connetquot Cent. Sch. Dist.*, 227 A.D.2d 593, 593, 643 N.Y.S.2d 622 (N.Y.App. Div., 2d Dep't 1996); *see also Basso v. Miller*, 40 N.Y.2d 233, 241, 386 N.Y.S.2d 564, 352 N.E.2d 868 (1976); *Galindo v. Town of Clarkstown*, 305 A.D.2d 538, 538–39, 759 N.Y.S.2d 757 (N.Y.App. Div., 2d Dep't 2003). However, a landowner of abutting property does not owe a duty to warn or protect others from a defective or dangerous condition on neighboring premises unless such landowner of the abutting property causes or contributes to that condition. *See Gehler v. City of New York*, 261 A.D.2d 506, 507, 692 N.Y.S.2d 397 (N.Y.App. Div., 2d Dep't 1999); *Badou v. New Jersey Transit Rail Operations*, 221 A.D.2d 303, 304, 633 N.Y.S.2d 530 (N.Y.App. Div., 2d Dep't 1995); *Pensabene v. Inc. Vill. of Valley Stream*, 202 A.D.2d 486, 486, 609 N.Y.S.2d 75 (N.Y.App. Div., 2d Dep't 1994).

■ Although it is unclear whether Cardinal was standing upon the Town's right of way or Keyspan Generation's property at the time of the incident, it is undisputed that the electrical wires are located upon Keyspan Generation's property and that the electrical wires are 20–25 feet beyond the top of the embankment's slope, which borders the Town's property. While Cardinal contends that the Town's failure to trim the trees upon its right of away contributed to the allegedly hidden danger, he has not provided any evidence to refute the Town's evidence that Keyspan Electric, as assignee of LILCO, and not the Town, was responsible for cutting the foliage surrounding the electrical wires. (Utility Defs.' Not. of Mot. for Summ. J., exh. K). Thus, Cardinal has failed to raise a genuine issue of fact as to whether the Town caused or contributed to the placement of the electrical wires close to the embankment.

Since the Town neither owned the property nor caused or contributed to the dangerous condition, the Town did not have a duty to warn or protect others from the electrical wires upon Keyspan Generation's property.

## B. Stanley Irwin, Jr.

### 1. High Voltage Proximity Act

■ Cardinal contends that Stanley Irwin, Jr. was negligent and subject to liability pursuant to the High Voltage Proximity Act. *See Lane v. N.Y.S. Gas & Elec. Corp.*, 18 F.3d 172, 178 (2d Cir.1994) (opining that non-compliance with the High Voltage Proximity Act may be evidence of negligence). According to the High Voltage Proximity Act, an employer cannot require or permit an employee to participate in the handling of any materials if it is possible for such materials to come within ten (10) feet of a high voltage line unless precautionary action has been taken to de-

energize the line. N.Y. Labor Law § 202–h(2)(b)–(3)(a) (McKinney 2002).

There are issues of fact that preclude a finding as a matter of law that Stanley Irwin, Jr. violated the High Voltage Proximity Act. First, the parties dispute the exact location on the embankment upon which plaintiff was standing at the time of his injury and the distance of the transmission wire to the ground decreases as one proceeds farther down the embankment's slope. After a review of the survey submitted by Cardinal, it is clear that the transmission wire can be anywhere from nineteen (19) to twenty-six (26) feet from the ground depending on one's precise location on the embankment. (Cardinal's Notice of Cross–Mot., exh. 3). Second, although Cardinal contends that the limb that he was lifting at the time of the accident was approximately twenty-two (22) feet long, (Cardinal's Local Civil Rule 56.1 Statement in Reply to Utility Defs.' Mot. para. 42), Stanley Irwin, Jr. testified at a deposition that the limb was approximately twelve (12) feet in length. (Utility Defs.' Not. of Mot. for Summ. J., exh. J, p. 123–24). Therefore, there are material issues of fact regarding whether it was possible for the tree limb to come within dangerous proximity of the transmission wire and whether Stanley Irwin, Jr. violated the High Voltage Proximity Act, and thus Cardinal's *in limine* motion on this issue is denied.

## 2. New York Scaffolding Law

■ Cardinal further contends that Stanley Irwin, Jr. violated § 240(1) of the New York Labor Law, which requires contractors to furnish or erect suitable devices in the "repairing, altering, painting, [or] cleaning ... of a building or structure ...." N.Y. Labor Law § 240(1) (McKinney 2002). Although Cardinal alleged that he was standing below the crest of the embankment at the time of his injury, he now urges acceptance of Stanley Irwin's version of the accident, i.e. that Cardinal was standing on a man-made platform comprised of branches, logs, and sticks while he attempted to dumb debris down the embankment. However, regardless of whether Cardinal was standing upon the man-made platform, and irrespective of whether the platform is a "device" covered by § 240(1), the statute is inapplicable to this case.

The New York Court of Appeals has defined a building or structure as "any production or piece of work artificially built up or composed of parts joined together in some definite manner." *Lombardi v. Stout*, 80 N.Y.2d 290, 295, 590 N.Y.S.2d 55, 604 N.E.2d 117 (1992) (internal citations omitted). Cardinal claims that since the tree removal was incidental to the repairing of the building at 14A Rams Hill Road, the activity was protected by the statute. However, the facts are distinguishable from situations where tree removal concerned otherwise protected activities involving a structure. In *Lombardi*, a case cited by Cardinal, there was evidence that:

> the tree removal was a part of the house construction and site work for a driveway and parking lot. There is evidence that the tree was located 10 to 15 feet from the house in an area between the house and its adjacent two-car garage and that its branches touched the roofs of both buildings. . . . [T]he tree removal was part of a plan to remodel the house ... and ... at the time [plaintiff] was working on the tree, the scaffolding was placed against the building in preparation for doing so.

*Id.* at 296, 590 N.Y.S.2d 55, 604 N.E.2d 117.

Here, the tree removal was completely unrelated to any work scheduled to be done on the structure located on the 14A Rams Hill Road premises on the day of

the accident. Moreover, Cardinal's actions did not even occur on the same property of the structure to which incidental repairs were to be made, but rather across Rams Hill Road near the border of the Town and Keyspan Generation's property.

### 3. Stanley Irwin, Jr.'s Motion for Summary Judgment

Stanley Irwin, Jr. has moved for summary judgment on the ground that the allegedly hazardous condition was open and obvious. There are issues of fact which preclude a determination in his favor.

### C. The Utility Defendants

■ Cardinal has cross-moved to strike the utility defendants' summary judgment motion on the ground that they failed to timely submit a "separate, short and concise statement of material facts" as required by Local Civil Rule 56.1. Local Civ. R. 56.1(a). While Cardinal did not have the Rule 56.1 statement when preparing his opposition papers, his reference to the materials originally submitted by the utility defendants evidences that he was not prejudiced by the lack of a 56.1 statement. *See Cello Holdings, L.L.C. v. Lawrence–Dahl Cos.*, 89 F.Supp.2d 464, 469 (S.D.N.Y.2000); *Citibank N.A. v. Outdoor Resorts of Am., Inc.*, No. 91–1407, 1992 WL 162926 (S.D.N.Y. June 29, 1992) (holding that granting summary judgment in favor of plaintiff on basis of defendants' failure to submit a Rule 56.1 statement was unwarranted where defendants submitted papers that made defendants' basis for opposing summary judgment sufficiently clear). For these reasons, Cardinal's motion to strike the utility defendants' summary judgment motion is denied.

### 1. Additional Facts

Keyspan Generation, formerly known as Marketspan Generation, LLC, was deeded the Glenwood Landing property on May 27, 1998 by LILCO. (Utility Defs.' Local Civil Rule 56.1 Statement at 2 n.2; Utility Defs.' Not. of Mot. for Summ. J., exh. G). LILCO holds an easement over the Keyspan Generation property for "the operation and maintenance of an electrical transmission and distribution substation and related facilities on the easement parcel described on Schedule A ...." (Utility Defs.' Not. of Mot. for Summ. J., exh. G). Although LILCO was initially responsible for trimming trees located along the Town's right of way and near the electrical wires on Keyspan Generation's property, (Town's Local Civil Rule 56.1 Statement para. 6), LILCO's responsibilities under the Management Services Agreement with LIPA were assigned to Marketspan Electric Services, LLC, now known as Keyspan Electric Services, LLC. (Utility Defs.' Not. of Mot. for Summ. J., exh. W).

### 2. Keyspan Generation

#### a. Easements

■ An easement is an interest in land authorizing its owner the limited use of the land of another without interference from third parties or the owner of the land itself. *See Trustees of Southampton v. Jessup*, 162 N.Y. 122, 126, 56 N.E. 538 (1900). The easement holder possesses an actual interest in the land and those rights necessary to effectuate the use of the easement. *See Sutera v. Go Jokir, Inc.*, 86 F.3d 298, 302 (2d Cir.1996) (citing *Bliss v. Greeley*, 45 N.Y. 671, 674 (1871)). The servient tenement owner "retains a possessory interest in the land, and can use it for any purpose consistent with the dominant owner's ... enjoyment of the easement." *Id.* (citing *Bakeman v. Talbot*, 31 N.Y. 366, 370 (1865)).

#### (i). Duty of Care to Third Parties

■ The general rule imposes the duty to maintain and repair structures

upon the dominant owner. *See Tagle v. Jakob,* 97 N.Y.2d 165, 168, 737 N.Y.S.2d 331, 763 N.E.2d 107 (2001). In fact, a servient owner has a passive duty to refrain from interfering with the dominant owner's rights. *See id.; Herman v. Roberts,* 119 N.Y. 37, 42, 23 N.E. 442 (1890).

 Although the owner of the servient tenement generally has no affirmative duty to repair or maintain, there are recognized exceptions to the rule. *See Sutera,* 86 F.3d at 302; *Greenfarb v. R.S.K. Realty Corp.,* 256 N.Y. 130, 135, 175 N.E. 649 (1931); *Elzer v. Nassau County,* 111 A.D.2d 212, 213, 489 N.Y.S.2d 246 (N.Y.App. Div., 2d Dep't 1985). The duty to prevent injuries arising from property conditions "generally depends upon 'occupancy, ownership, control, or a special use of the premises' by the defendant." *Sutera,* 86 F.3d at 302 (quoting *Balsam v. Delma Eng'g Corp.,* 139 A.D.2d 292, 296, 532 N.Y.S.2d 105 (N.Y.App. Div., 1st Dep't 1988)). In *Sutera v. Go Jokir, Inc.,* 86 F.3d 298 (2d Cir.1996), the Second Circuit noted that the circumstances defining an easement's existence are vital in determining whether the dominant and servient easement owners owe any duty to third parties. *See id.* at 303.

 Under New York law, the dominant owner owes no duty of reasonable care to third parties if "a condition exists on a servient owner's property, but it is not situated on a part of the property subject to the easement" or if "a condition exists in the part of the property subject to the easement, but the dominant owner has not exercised the right granted to it, e.g. has not yet built a roadway ...." *Id.* Both the dominant and servient owner owe such a duty if "an injury occurs in a place where the dominant owner is exercising its rights and the servient owner is also able,

for its own purpose, to use the granted property ...." *Id.* Only the easement's dominant owner owes a duty to third parties if its "rights in the property subject to the easement are so exclusive that servient owner retains no rights whatever over the subject easement, and an injury occurs where the dominant owner has such exclusive control." *Id.*

### (ii). Scope of the Easement

 Cardinal contends that the since the deed's metes and bounds description of the easement only pertains to the electric substation, LIPA/LILCO's easement is exclusive only over that portion of land where the substation is situated and that LIPA/LILCO and Keyspan Generation both had a right to use and an obligation to maintain the property where the accident occurred. (Cardinal's Mem. of Law in Opp'n to Utility Defs.' Mot. for Summ. J. and in Supp. of Cross-Mot. at 15–16). The utility defendants claim that the "related facilities" language of the deed covers the transmission wires and thus Keyspan Generation, as the easement's servient owner, had no duty to maintain or repair the dangerous condition. (Neglia Reply Aff. in Opp'n to Cardinal's Cross–Mot. para. 28–30).

The easement between LILCO (Grantor) and Marketspan Generation LLC[1] (Grantee) provides in pertinent part:

> Reserving unto the Grantor, its successors and assigns, *a permanent and perpetual easement for the operation and maintenance of an electrical transmission and distribution substation and related facilities on the easement parcel described on Schedule A,* together with the right of ingress and egress, on foot and by vehicle, to and from the described easement parcel and the adjoin-

---

1. Marketspan Generation, LLC is the predecessor to Keyspan Generation, LLC. (Utility

Def.'s Local R. 56.1 Statement of Facts at 2 n.2).

ing public roads over all existing and future roads and driveways on the herein conveyed premises.

(Utility Defs.' Not. of Mot. for Summ. J., exh. G) (emphasis added). The first page of Schedule A is entitled "Description of Easement (Substation)" and provides a metes and bounds description of the easement property, while the second page outlines the property boundaries of various lots. (Id.; Tay Decl. para. 6–7). When plotted out, the metes and bounds description in the first Schedule A only covers a parcel surrounding the substation, but does not encompass the accident site. (Cardinal's Notice of Cross–Mot., exh. 2). Thus, Cardinal contends, the easement parcel that LILCO reserved in its property deed to Keyspan Generation does not cover the transmission wire that injured him.

■ The utility defendants urge that the phrase "related facilities" includes the transmission lines extending beyond the metes and bounds description of the easement property. While the deed envisions an "electrical transmission and distribution substation and related facilities," it also states that the operation and maintenance of the substation and related facilities is to be "on the easement parcel described on Schedule A . . . ." (Defs.' Not. of Mot. for Summ. J., exh. G). Although it is clear that the substation can exist upon the easement property, the meaning of the words "related facilities" is ambiguous. If the words used in the instrument are ambiguous, the court will look to the surrounding circumstances existing at the execution of the deed, the subsequent acts of the parties, and the manner of use and enjoyment under the grant. See Lewis v. Young, 92 N.Y.2d 443, 454, 682 N.Y.S.2d 657, 705 N.E.2d 649 (1998); Wilson v. Ford, 209 N.Y. 186, 196, 102 N.E. 614 (1913); Hogg v. State, 44 A.D.2d 747, 747, 354 N.Y.S.2d 729 (N.Y.App. Div., 3d Dep't 1974).

■ Obviously, the parties to the deed did not intend for electricity to be distributed merely within the boundaries of the parcel outlined in the first page of Schedule A, entitled "Description of Easement (Substation)." Furthermore, acts of the parties subsequent to the execution of the deed support the contention that Keyspan Generation does not operate the transmission lines. LIPA's Operating Instructions delineate the procedures for the inspection, operation, and monitoring of the transmission and distribution system. (Utility Defs.' Not. of Mot. for Summ. J., exh. F). The Management Services Agreement ("MSA") sets forth the duties of the LIPA/LILCO defendants with respect to the transmission and distribution system, (Id. exh. H), and after the merger of LILCO and Brooklyn Gas, LILCO assigned all of its rights, obligations, and interests under the MSA to Marketspan Electric Services, LLC (now Keyspan Electric Services, LLC) by an agreement dated May 28, 1998. (Id. exh. W). A deed's plain language may be trumped by an interpretation demanded by the circumstances in order to afford reasonable facilities for the use and enjoyment of the right of way reserved. See O'Neill v. O'Hare, 254 N.Y. 186, 190, 172 N.E. 464 (1930). Based upon the deed's phrase "operation and maintenance of an electrical transmission and distribution substation and related facilities" as well as the subsequent use of transmission lines outside of the easement parcel with full knowledge of Keyspan Generation, it was clearly the intention of the parties to reserve an easement above Keyspan Generation's land for transmission lines as well as property described in the first page of Schedule A.

(iii). Control of the Easement Property

■ Since the easement of LILCO includes the transmission wire that injured Cardinal, the issue to be determined is

whether Keyspan Generation, as servient owner, owed a duty of care. Although the Second Circuit has cautioned that not all personal injury cases involving easements fit neatly within the categories outlined in *Sutera v. Go Jokir, Inc.*, the instant case is closely analogous to example (4) in that case: a dangerous condition "so closely tied to the exercise of the easement holder's rights that the servient owner could not act to prevent the injury." 86 F.3d 298, 304 (2d Cir.1996).

It appears that Cardinal has misinterpreted the law of negligence and the purpose of a Notice to Admit. *See* Fed. R.Civ.P. 36. The Notice to Admit requests the utility defendants to admit or deny that they "did not perform and/or have performed a topographical survey . . . ." (Cardinal's Notice of Cross–Mot., exh. 5–6). Cardinal claims that the utility defendants' admission "that they each failed to perform a topographical profile survey" is evidence of their alleged negligence. (Cardinal's Reply Mem. of Law in Opp'n to Utility Defs.' Mot. for Summ. J. at 9–10). The fact that the utility defendants did not perform the survey says nothing about their obligation to do so. Cardinal also relies on the utility defendants' statement that "Keyspan Generation is responsible for maintaining the subject property" as an admission of responsibility to maintain the accident site, (Utility Defs.' Not. of Mot. for Summ. J., exh. D, para. 19–19A; Cardinal's Reply Mem. of Law in Opp'n to Mot. for Summ. J. at 8), ignoring the previous interrogatory response, which states, "Keyspan Generation is not responsible for maintaining and inspecting the transmission lines located on the property." (Utility Defs.' Not. of Mot. for Summ. J., exh. D, para. 18–18A).

According to the MSA, the transmission and distribution system was owned by LIPA. (Utility Defs.' Not. of Mot. for Summ. J., exh. H, sec. 3.1). LILCO was responsible for both the operation and maintenance of the transmission and distribution system. (*Id.* at sec. 4.2). It was LILCO's duty to keep the system in "good working order and repair and in a neat and orderly condition (including the cleanup of litter and debris as required)" and to "conduct periodic, corrective, and preventive maintenance and repair . . . ." (*Id.* at sec. 4.3).

As noted above, LILCO's responsibilities under the MSA were transferred to the entity currently known as Keyspan Electric Services, LLC. (Utility Defs.' Not. of Mot. for Summ. J., exh. W). Therefore, the maintenance of the transmission and distribution system was conducted by Keyspan Electric on behalf of LIPA, the dominant owner. Brian McCarthy, employed by Keyspan Electric, (McCarthy Aff., annexed to Neglia Reply Aff. in Opp'n to Cardinal's Cross–Mot.), testified at a deposition that the Electric Service Department of Keyspan Electric was responsible for inspecting the transmission lines and trimming nearby trees and foliage. (*Id.;* Cardinal's Notice of Cross–Mot., exh. 8). Additionally, John Tiernan, the Operations Maintenance Manager for Keyspan Generation's Glenwood Landing Power Plant, testified at deposition that "Keyspan Electric . . . is responsible for the transmission lines. It has a maintenance service agreement with LIPA . . . ." (Utility Defs.' Not. of Mot. for Summ. J., exh. M).

Based upon the foregoing, there is no genuine issue of fact as to the ownership and control of the transmission lines. In light of the depositions, answers to interrogatories, affidavits, and other evidentiary material submitted, it is clear that the transmission lines were owned by LIPA, and operated and maintained by Keyspan Electric. Although Cardinal contends that Keyspan Generation shares in the use and

maintenance of the property at the accident site, the record shows otherwise. Although Keyspan Generation conceded that it is responsible for maintaining the property above which the transmission lines are located, (Utility Defs.' Not. of Mot. for Summ. J., exh. D. para. 19–19A), it specifically noted that it was not responsible for maintaining and inspecting the lines located above the property, or the easement area. Where the dangerous condition is "so closely tied to the exercise of the easement holder's rights that the servient owner could not act to prevent the injury," the servient estate does not owe a duty of care. *Sutera v. Go Jokir, Inc.*, 86 F.3d 298, 304 (2d Cir.1996).

Here, the operation and maintenance of the transmission lines were under the exclusive control of Keyspan Electric. Cardinal has not shown that Keyspan Generation was authorized to interfere, in any manner, with the transmission lines located above its property. There is no evidence that Keyspan Generation had any role in the operation or maintenance of the transmission lines. The reliance upon Keyspan Generation's failure to conduct a topographical survey as a basis for liability improperly assumes it had a duty of care with respect to the transmission lines. Since Keyspan Generation, as servient owner, had no duty to remedy the allegedly dangerous condition, summary judgment in its favor is appropriate.

b. Open and Obvious Danger

A landowner has no duty to warn of an open and obvious danger. *See Tagle v. Jakob*, 97 N.Y.2d 165, 169, 737 N.Y.S.2d 331, 763 N.E.2d 107 (2001). Although the issue of whether a danger is latent or open and obvious is normally a question of fact for the jury, courts may determine that a hazard was open and obvious as a matter of law when such a conclusion is established by clear and undisputed evidence. *See id.; Liriano v.*

*Hobart Corp.*, 92 N.Y.2d 232, 242, 677 N.Y.S.2d 764, 700 N.E.2d 303 (1998). Defendants in the underlying action contend that the facts compel a finding that the transmission wire was an open and obvious hazard, and urge this Court to follow the rationale of *Tagle*. In concluding as a matter of law that electric wires were open and obvious to the tenant, whose guest was injured when he touched an electrical transmission wire upon an easement in favor of New York State Electric and Gas Co., the New York Court of Appeals in *Tagle* stated:

> The photograph of the trees and wires taken from the backyard—stipulated by plaintiff at argument to be an accurate portrayal of the scene at the time of the accident—shows two electric wires running above the ground, entering the property, passing into the tree, leaving the tree, and then exiting the property. Any observer reasonably using his or her senses would see the wires and the tree though which the wires passed. It is unimaginable that an observer could see the wires entering and leaving the tree and not know that the wires passed through it. In short, there is nothing that [the property owner] knew. or should have known that was not readily obvious to the tenant.

*Tagle*, 97 N.Y.2d at 169–70, 737 N.Y.S.2d 331, 763 N.E.2d 107. Since the *Tagle* court found the danger to be open and obvious, it held that the property owner had no duty to warn the tenant of that hazard. *See id.* at 170, 737 N.Y.S.2d 331, 763 N.E.2d 107.

The *Tagle* case is distinguishable from the instant case in several important respects. First, Cardinal has not stipulated to the accuracy of the utility defendants' photographs of the accident site. To the contrary, Cardinal claims that his angle of view on the day of the accident differs

from the utility defendants' photographs, and thus are not fair and accurate representations of the scene. (Cardinal's Mem. of Law in Opp'n to Utility Defs.' Mot. for Summ. J. and in Supp. of Cross-Mot. at 19). Second, the two wires in *Tagle* ran through a *single* pine tree in the defendant's yard, which allowed the plaintiff to observe the wires entering the property, passing into the tree, leaving the tree, and then exiting the property. *See Tagle*, 97 N.Y.2d at 167, 169–70, 737 N.Y.S.2d 331, 763 N.E.2d 107. Here, the photographs provided by both Cardinal and the utility defendants show that trees run the length of Rams Hill Road, obscuring a clear view of the electrical wires that was present in *Tagle*. (Cardinal's Notice of Cross–Mot., exh. 11, 13; Utility Defs.' Not. of Mot. for Summ. J., exh. O, P). Third, the plaintiff in *Tagle* was injured by *overhead* electrical wires running approximately twenty-five (25) feet above the ground. *See Tagle*, 97 N.Y.2d at 167, 737 N.Y.S.2d 331, 763 N.E.2d 107. In the instant case, the transmission wires were located only four (4) feet above the embankment's plane upon which Cardinal was standing at the time of the accident, a height dissimilar from the overhead wires in *Tagle*. (Cardinal's Local Civil Rule 56.1 Statement in Reply to Utility Defs.' Mot. para. 36).

The resolution of an inquiry as to whether a danger is open and obvious is fact specific and therefore is generally reserved for the jury. Since there is no clear and undisputed evidence regarding the visibility of the transmission wires, I cannot determine whether the hazard was open and obvious as a matter of law, and the issue is reserved for trial.

### 3. Brooklyn Union Gas Company and Keyspan Energy Corporation

 According to the affidavit of Ronald Macklin, BUG, currently functioning under the name of Keyspan Energy Delivery New York, is a utility that owns and operates a gas distribution system in the New York City boroughs of Brooklyn, Queens, and Staten Island. (Macklin Aff., annexed to Neglia Reply Aff. in Opp'n to Cardinal's Cross–Mot.). The entity does not own, operate, manage or maintain the electric transmission system on Long Island that is the subject of this litigation. (*Id.*). Cardinal has offered no evidence to support the contention that BUG is liable for the injuries which he incurred. Instead, Cardinal relies upon a Notice to Admit in which BUG admitted that it did not perform a topographical survey before the transmission lines at issue were installed. (Cardinal's Notice of Cross–Mot., exh. 5–6). However, as discussed above, *see supra* Part III.C.2.a.iii.,the fact that an entity failed to perform a topographical survey does not create liability where no duty exists. Since BUG has never been associated with the transmission lines or property upon which they are located, prior to the installation or subsequent thereto, it owes Cardinal no duty of care and the action against it is dismissed.

Similarly, Keyspan Corp. has no involvement with the electrical transmission system or the property at issue in this case. According to the affidavit of Alfred Bereche, Keyspan Corp. is the parent/holding company for several entities, none of which played any role in the installation, ownership, operation, or maintenance of the electrical transmission and distribution system that injured Cardinal. (Bereche Aff., annexed to Neglia Reply Aff. in Opp'n to Cardinal's Cross–Mot.). The sole function of Keyspan Corp. is to act as a holding company for its subsidiaries. (*Id.*). The fact that it also admitted that it failed to perform a topographical survey does not create liability where no duty exists. (Pl.'s Notice of Cross–Mot., exh. 5–6); *see supra* Part III.C.2.a.iii.

## IV. The Action 2 Motion

### A. Additional Facts

The following additional facts are relevant to TIG's motion for summary judgment.

Trevor Cardinal performed various duties at 14A Rams Hill Road for Stanley Irwin, Jr., including scraping loose paint, priming walls, removing tiles, and painting, (TIG's Mot. for Summ. J., exh. V, at 53–54), to make the property more attractive to a prospective tenant. (*Id.* at 374, 417). He was compensated by a reduction in rent arrears owed to Jill Irwin as well as cash. (*Id.* at 40–41, 53–58). In June 1999, the tenant of 14 Rams Hill Road complained to Stanley Irwin, Jr. about "unsightly" debris that had accumulated across the street from that property. (*Id.* at 75–77). About a week later, Stanley Irwin, Jr. instructed Cardinal to help him discard the pile of tree limbs and branches from the area across from 14 Rams Hill Road. (*Id.* at 94–98). Stanley Irwin, Jr. testified at a deposition that, although compensation for this work was never discussed, Cardinal's time probably would have reduced his outstanding rent arrears to Jill Irwin. (*Id.*).

The homeowner's insurance policy that TIG issued to Jill and Stanley Irwin, Jr. was in effect on June 26, 1999. (*Id.,* exh. N). Section II of the insurance policy states that coverage does not apply to bodily injury or personal injury "arising out of or in connection with a business engaged in by an insured." (*Id.,* at Supp. Provisions, p. 3, Sec. II, para. (b)(1)). "Business" is defined as a "trade, profession or occupation." (*Id.* at Definitions, p. 1, para. 3).

The insurance policy also provides that, with respect to "residence employees," TIG is obligated to pay "all benefits required of an insured by the New York Workers' Compensation Law" and "on behalf of an insured all damages for which the insured is legally liable because of bodily injury sustained by a covered residence employee. The bodily injury must be caused by accident ... and arise out of and in the course of employment by the insured ...." (*Id.* at Workers' Compensation, p. 1). A "covered residence employee" under the Workers' Compensation section of the insurance policy is defined as a residence employee who is both:

a. Engaged in regular employment of less than 40 hours per week or is engaged in casual employment; and

b. Defined under the New York Workers' Compensation Law as an employee for whom Workers' Compensation benefits must be provided.

(*Id.*). A "residence employee" is defined as:

a. An employee of an insured whose duties are related to the maintenance or use of the residence premises, including household or domestic services; or

b. One who performs similar duties elsewhere *not related to the business of an insured.*

(*Id.* at Agreement, p. 2, para. 8) (emphasis added). "Residence premises" is defined as:

a. The one family dwelling, other structures, and grounds; or

b. That part of any building;

where you reside and which is shown as the "residence premises" in the Declarations.

(*Id.* para. 9).

### B. Insurer's Duty to Defend and Indemnify

Under New York law, an insurer's duty to defend is broader than the duty to indemnify. *See Commercial Union Assur. Co. v. Oak Park Marina Inc.,* 198 F.3d 55, 59 (2d Cir.1999); *Transamerica Ins. Group v. Rubens,* No. 97–

8911, 1999 WL 673338, *3, 1999 U.S. Dist. LEXIS 13239, at *8 (S.D.N.Y. Aug. 27, 1999). Yet an insurer cannot be compelled to defend "if there is no legal or factual allegation in the underlying complaint for which the insurer might eventually have to indemnify the insured." *Commercial Union,* 198 F.3d at 59; *Mongelli v. Chicago Ins. Co.,* No. 99–8149, 2002 WL 32096578, at *4 (E.D.N.Y. Jan.15, 2002); *Mount Vernon Fire Ins. Co. v. Creative Housing Ltd.,* 797 F.Supp. 176, 180 (E.D.N.Y.1992). It is the insurer's burden to demonstrate that the "allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, in toto, are subject to no other interpretation." *International Paper Co. v. Continental Cas. Co.,* 35 N.Y.2d 322, 325, 361 N.Y.S.2d 873, 320 N.E.2d 619 (1974); *see also Transamerica Ins. Group,* 1999 WL 673338, **3–4, 1999 U.S. Dist. LEXIS at *8–9.

 The interpretation of an insurance policy is a question of law to be decided by the Court. An insurance policy is to be read in light of "common speech" and the reasonable expectations of a business person. *See Belt Painting Corp. v. TIG Ins. Co.,* 100 N.Y.2d 377, 383, 763 N.Y.S.2d 790, 795 N.E.2d 15. 17 (2003). If the complaint's allegations encompass a claim that might reasonably fall within the policy, the insurer's duty to defend is triggered. *See id.; Fitzpatrick v. Am. Honda Motor Co.,* 78 N.Y.2d 61, 65, 571 N.Y.S.2d 672, 575 N.E.2d 90. 78 N.Y.2d 61, 571 N.Y.S.2d 672, 575 N.E.2d 90 (1991). Furthermore, to " 'negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies to the particular case.' " *Belt Painting Corp.,* 100 N.Y.2d at 383, 763 N.Y.S.2d 790, 795 N.E.2d 15 (quoting *Continental Cas. Co. v. Rapid–American Corp.,* 80 N.Y.2d 640, 652, 593 N.Y.S.2d 966, 609

N.E.2d 506 (1993)). Thus, policy exclusions are narrowly construed, with all ambiguities resolved in favor of the insured. *See id.*

C. Business Pursuits Exclusion

 TIG contends that Cardinal's injury arose out of Stanley Irwin Jr.'s real estate business and that therefore, the "business pursuits" exclusion applies. (TIG's Mem. of Law in Supp. of Mot. for Summ. J. at 6–7). Whether the clearing of debris across from the premises maintained by Stanley Irwin, Jr. constituted a "business pursuit" within the policy's exclusion depends upon whether he " 'regularly engaged in a particular activity with a view toward earning a livelihood or making a profit.' " *Showler v. Am. Mfrs. Mut. Ins. Co.,* 261 A.D.2d 896, 897, 690 N.Y.S.2d 369 (N.Y.App. Div., 4th Dep't 1999) (quoting *Stewart v. Dryden Mut. Ins. Co.,* 156 A.D.2d 951, 951–52, 549 N.Y.S.2d 246 (N.Y.App. Div., 4th Dep't 1989)); *Broome County Coop. Ins. Co. v. Kendall,* 178 A.D.2d 709, 710, 576 N.Y.S.2d 945 (N.Y.App. Div., 3d Dep't 1991) (same). Thus, to constitute a business, two elements must be satisfied: (1) continuity and (2) profit motive. *See Home Insurance Co. v. Aurigemma,* 45 Misc.2d 875, 879, 257 N.Y.S.2d 980 (N.Y.Sup.Ct.1965).

1. Continuity

 The element of continuity is satisfied by demonstrating that there was a "customary engagement" or "stated occupation." *See Ploen v. Aetna Cas. & Surety Co.,* 138 Misc.2d 704, 707, 525 N.Y.S.2d 522 (N.Y.Sup.Ct.1988). Stanley Irwin, Jr. was a licensed real estate broker conducting business under the name Spectrum Realty for approximately twenty years. (TIG's Mot. for Summ. J., exh. V, p. 255–56). He had been the rental agent for 14 and 14A Rams Hill Road since the early

1990s. (*Id.* at 13). Stanley Irwin, Jr. was also responsible for management of those properties. According to the deposition testimony of Derek Irwin:

> it was clear that it would be [Stanley Irwin Jr.'s] responsibility to rent the property and ... in exchange for being the exclusive broker, *he would be paid by the renters paying him the commission and as part of that, he was also responsible for* doing the management of the property and *maintaining the property* and all that sort of stuff.

(*Id.*, exh. T, p. 31) (emphasis added). Stanley Irwin, Jr.'s long term management satisfies the element of continuity.

### 2. Profit Motive

A telephone interview of Stanley Irwin, Jr. and deposition testimony reveal that business was being conducted on the day of the accident. In a telephone interview with Continental Casualty Company (CNA), Stanley Irwin, Jr. stated that he and Cardinal "were just going to make the rounds of some of my rental properties, clean up, straighten up, do whatever has to be done ...." (TIG's Mot. for Summ. J., exh. Q, p. 2). Cardinal testified at a deposition that he expected to work most of the day, (*id.*, exh. U, p. 665–66), and Stanley Irwin, Jr. testified at a deposition that Cardinal's time disposing of the debris probably would have counted towards the reduction in his rent owed. (*Id.*, exh. V, p. 94–98).

The work being performed at 14A Rams Hill Road in June 1999 was in preparation for a prospective tenant that had expressed interest in renting the premises. (TIG's Mot. for Summ. J., exh. V, p. 374). Stanley Irwin, Jr. conceded that he would have received a commission if a lease was signed for 14A Rams Hill Road. (*Id.* at 374–75). Thus, the profit motive has also been established.

The fact that Stanley Irwin, Jr. was (1) the father of the property owner, (2) re-

moving debris across the street from the property, and (3) working on a Saturday does not prove that he was not engaged in a business pursuit. "An insured is engaging in a business pursuit when his activities are incidental to his employment." *Bowman v. Allstate Ins. Co.*, 238 F.3d 468, 470 (2d Cir.2001) (internal citation omitted). Therefore, the business pursuit exclusion is applicable and TIG is relieved of its duty to defend or indemnify the policyholders.

### D. Workers' Compensation Coverage

Cardinal contends that he is entitled to workers' compensation benefits under the insurance policy as a "residence employee" of Stanley Irwin, Jr.

### 1. Cardinal's Pleadings

TIG argues that Cardinal's failure to claim an entitlement to workers' compensation benefits in his own underlying complaint or in his answer to the declaratory complaint bars his motion. Yet Cardinal's assertion in his underlying complaint that the "employers did not maintain workers' compensation insurance for plaintiff Trevor Cardinal" does not prevent him from taking a contrary view in the declaratory judgment action, (TIG's Mot. for Summ. J., exh. A), since the general practice of inconsistent pleadings are permitted and of "the sort normally tolerated by our legal system." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999); *see also Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 782 (3d Cir.2001).

In his answer to TIG's declaratory complaint, Cardinal failed to assert any claim regarding his alleged entitlement to workers' compensation benefits. (TIG's Mot. for Summ. J., exh. I). Rule 8 of the Federal Rules of Civil Procedure states in pertinent part:

(a) Claims for Relief. A pleading which sets forth a claim for relief whether an original claim, counterclaim, ... [or] cross-claim ... shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief and (3) a demand for judgment for the relief the pleader seeks.

Fed.R.Civ.P. 8(a). However, a party may amend a pleading by leave of the court, which shall be freely given when justice so requires. Fed.R.Civ.P. 15(a); *see also Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir.1999). In the interest of justice and time, and assuming a forthcoming application to amend the complaint, I will address Cardinal's claim for workers' compensation benefits rather than entertain Cardinal's potential request for leave to amend his pleading.

2. Statute of Limitations

According to the insurance policy, notice of a workers' compensation claim to the insured, Jill and Stanley Irwin, Jr., would be deemed notice to TIG. (TIG's Mot. for Summ. J., exh. N, at Workers' Compensation, p. 2). Yet the policy also states that any term of the insurance that conflicts with New York Workers' Compensation Law is amended to conform to that law. (*Id.*). Section 18 of the Workers' Compensation Law requires:

> Notice of injury ... for which compensation is payable ... shall be given to the employer within thirty days after the accident causing such injury .... The notice shall be in writing, and contain the name and address of the employee, and state in ordinary language the time, place, nature and cause of the injury, and be signed by him or a person on his behalf ....

N.Y. Workers' Comp. Law § 18 (McKinney 2003). Pursuant to Workers' Compensation Law § 28. the right to claim compensation "shall be barred ... unless within two years after the accident ... a claim for compensation shall be filed with the chairman ...." *Id.* § 28.

Since the insurance policy conflicts with New York law, the policy is amended to conform to the aforementioned statutory requirements. Therefore, the fact that Stanley Irwin, Jr. had notice of the claim did not relieve Cardinal of his obligation to adhere to the procedures outlined in § 18 of the New York Workers' Compensation Law. Cardinal has presented no evidence that notice of the injury was presented in writing to Stanley Irwin, Jr. Additionally, Cardinal failed to file a claim for compensation with the Workers' Compensation Board by June 26, 2001, the date the two-year statute of limitations expired. *See Bielat v. Alco Prods., Inc.*, 28 A.D.2d 747, 747, 280 N.Y.S.2d 967 (N.Y.App. Div., 3d Dep't 1967) (holding that an employer's report of injury is insufficient to meet the requirements of § 28 as a claim for compensation and will not toll the statute of limitations). Thus, his claim for such benefits is time barred.

3. Residence Employee

Even assuming that Cardinal timely filed a claim for benefits, he was not a "residence employee" as that term is defined in the insurance policy. According to the policy, a residence employee is (a) "An employee of an insured whose duties are related to the maintenance or use of the residence premises, including household or domestic services" or (b) "One who performs similar duties elsewhere not related to the business of an insured." (TIG's Mot. for Summ. J., exh. N, at Agreement, p. 2, para. 8). The "residence premises" where the policyholders resided was 60 Beechwood Drive, Glen Head, New York.

There is no evidence, and in fact no contention, that Cardinal ever worked at 60 Beechwood Drive. Moreover, the de-

termination that Cardinal's duties were related to Stanley Irwin Jr.'s business, *see supra* Part IV.C., precludes characterizing Cardinal as a residence employee.

### 4. Other Insurance Provision

 The "Other Insurance" provision of the policy's Workers' Compensation section, Cardinal contends, covers all business employees of Stanley Irwin, Jr. as a sole proprietor. (Cardinal's Mem. of Law in Opp'n to TIG's Mot. for Summ. J. at 12). The Other Insurance clause reads in pertinent part:

> If a loss covered by this insurance is also covered by other insurance, we will not pay more than our share of benefits and costs. The shares of all applicable insurance will be equal until the loss is paid. However, if a loss covered by this insurance is also covered by insurance written to cover business employees of an insured who is a sole proprietor, this insurance is primary.

(TIG's Mot. for Summ. J., exh. N, at Workers' Compensation. p. 2). Cardinal claims that this provision conflicts with the "business pursuits" exclusion contained within the Workers' Compensation section, and therefore, the policy must be construed against TIG. (Cardinal's Mem. of Law in Opp'n to TIG's Mot. for Summ. J. at 12) (citing *Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 698 (2d Cir.1998)).

The Other Insurance clause is not triggered unless there is (1) a loss covered by the insurance policy at issue and (2) a loss covered by insurance written to cover business employees of an insured who is a sole proprietor. In other words, the clause is only applicable if Cardinal was covered by the residence employee language of the policy. As discussed above, Cardinal was not a residence employee entitled to coverage, *see supra* Part IV.D.3., and thus the Other Insurance clause is of no consequence.

### V. Conclusion

For the reasons set forth above, Stanley Irwin, Jr.'s motion for summary judgment is DENIED.

"In the absence of duty, there is no breach and without a breach there is no liability." *Pulka v. Edelman*, 40 N.Y.2d 781, 782, 390 N.Y.S.2d 393, 358 N.E.2d 1019 (1976). Keyspan Generation, BUG, Keyspan Corp., and the Town had no duty to repair or maintain the transmission wires that injured Cardinal. Accordingly, the respective motions for summary judgement are GRANTED and Cardinal's claims against these entities are dismissed.

The "business pursuits" exclusion of the insurance policy was triggered by Stanley Irwin Jr.'s activities in connection with the Rams Hill Road properties. Accordingly, TIG has no duty to defend or indemnify Stanley Irwin, Jr. in Cardinal's underlying action for personal injury. For the foregoing reasons, TIG's motion for summary judgment is GRANTED.

Since Cardinal's claim for workers' compensation benefits is barred by the statute of limitations, and since he was not a residence employee as defined by the TIG insurance policy, and the "Other Insurance" provision was not triggered, his application to compel TIG to pay workers' compensation benefits is DENIED.

IT IS SO ORDERED.